## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 27 2017, 11:15 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jennifer M. Lukemeyer
Tyler D. Helmond
Voyles Vaiana Lukemeyer
Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Reiske,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 27, 2017

Court of Appeals Case No.
02A03-1702-CR-377

Appeal from the
Allen Superior Court

The Honorable
John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D06-1412-FB-147

**Kirsch, Judge.**

[1] William Reiske ("Reiske") was sentenced to ten-year years following his convictions for criminal deviate conduct,[1] as a Class B felony, and contributing to the delinquency of a minor,[2] as a Class A misdemeanor.[3] On appeal, Reiske contends that the trial court abused its discretion when it denied his petition for modification of his ten-year sentence, eight years of which were ordered executed.

[2] We affirm.

## Facts and Procedural History

[3] The facts most favorable to the verdict show that on the night of December 28 through the morning of December 29, 2013, a group of college-aged friends, including Reiske, N.B., G.B., R.L., A.H., M.K., and T.H., were "hanging out" at N.B.'s Allen County home. *Tr. Vol. I* at 187. During the gathering, Reiske "target[ed]" T.H., who at that time was seventeen years old, by giving her shots and "trying to get [her] drunk." *Id.* at 210-11. Reiske gave T.H. "eight [drinks] at least." *Id.* at 229. After several guests had either left the party or gone to sleep, R.L. and A.H. remained in the basement with Reiske, M.K., and T.H. R.L. testified that Reiske began doing and saying things to T.H. that "just didn't

---

[1] *See* Ind. Code § 35-42-4-2 (2013). Effective July 1, 2014, this section was repealed by P.L. 158–2013, SEC. 438 and P.L. 214–2013, SEC. 37.

[2] *See* Ind. Code § 35-46-1-8.

[3] Reiske was charged with and convicted of two counts of Class B felony criminal deviate conduct; however, the trial court merged those counts prior to sentencing.

seem right." *Id*. at 234. Reiske's actions made R.L. feel uncomfortable, so he suggested it was time for bed. *Id*. at 234-35. R.L. and A.H. went upstairs, leaving Reiske, M.K., and T.H. downstairs.

[4] Soon thereafter, R.L. and A.H. went outside to smoke a cigarette and, through a basement window, they observed Reiske performing oral sex on T.H., who was naked from the waist down. *Id*. at 236. T.H. showed no reaction; due to her intoxication, she was in "kind of like a zombie state." *Id*. at 235, 238. While Reiske was performing oral sex on T.H., M.K. was using Reiske's cell phone to film the sex act. R.L. and A.H., unsure what to do, woke G.B. and N.B., who went outside and, through the window, also saw Reiske performing oral sex on T.H. *Id*. at 212-13; *Tr. Vol. II* at 259, 269. The young men went toward the basement stairs, calling out to ask what was going on. Reiske replied, "[N]othing, it[']s fine. [D]on't worry about it, just go back upstairs." *Tr. Vol. I* at 240. N.B. then called out to T.H., who did not respond. Instead, Reiske called up to say, "[S]he's fine." *Id*. at 241. Knowing that Reiske's responses were not consistent with what they had seen, R.L., A.H., G.B., and N.B. went into the basement and helped T.H. up the stairs—T.H. was "still in that zombie state where she -- you could tell she didn't really know what was going on." *Id*. at 242.

[5] T.H. retained only a few clear memories of that night. She specifically remembered "arriving, taking a shot, playing videogames and . . . waking up." *Id*. at 189. When she awoke in the basement, Reiske was on top of her, and M.K. had a phone. *Id*. T.H. remembered that, shortly thereafter, "[G.B.] and

[R.L.] and [A.H.] came running in and yelling . . .. They were just yelling like probably stop, stop." *Id.* T.H. then remembered getting dressed and being helped upstairs. *Id.* She also remembered, as if she were having "an out of body experience," that Reiske touched her vagina with his hands and tongue. *Id.* at 191-92. T.H. did not remember how her clothes were removed. *Id.* at 193-94.

[6] The incident was subsequently reported to the police, and on December 9, 2014, the State charged Reiske with two counts of Class B felony criminal deviate conduct and one count of Class A misdemeanor contributing to the delinquency of a minor. Following a September 2015 jury trial, Reiske was found guilty of all counts, and the Class B felonies were merged prior to sentencing. At the sentencing hearing, the State recognized as mitigating factors that Reiske had family and community support and no criminal history. *Sentencing Tr.* at 27-28. As aggravating factors, the State noted that, on the night in question, Reiske repeatedly plied T.H. with alcohol, while telling his friends that "he was in the process of setting up an amateur porn site." *Id.* at 28. The State emphasized that M.K. was recording the criminal acts not with his own cell phone, but with Reiske's phone. *Id.* at 28-29. Finally, the State argued that a sentence below the advisory "would depreciate the severity of what happened to the victim in this case." *Id.* at 30.

[7] Defense counsel, through the testimony of Reiske's mom, his stepdad, his father, his sister, his girlfriend, his girlfriend's father, and his former employer, presented evidence of Reiske's stable employment, his good character, and his

special talents in music and computer programming. During closing argument, defense counsel argued that Reiske's good character, family support, and career opportunities were strong mitigating factors for the trial court to consider as a basis for a fully suspended sentence. *Id.* at 32-33. Reiske, himself, thanked those who supported him and expressed hope that one day he would be seen as a hardworking and responsible person who cares about the wellbeing of others.[4] *Id*. at 35-37.

[8] The trial court found that Reiske's lack of criminal history and his "extraordinary support in the community" were mitigating factors. *Id.* at 37. Even so, the trial court said,

> There's a down side to that [support] from my perspective, not from yours but from mine, that apparently [Reiske] did not learn from this support. We're not here to decide whether [Reiske] is a good boy or a bad boy, but whether or not [Reiske] committed a very serious criminal act and the Jury has decided that. Uh, now my role is to determine the appropriate punishment or sanction. Um, moving on, the Prosecutor proposes, um, several aggravating circumstances. Um, there was evidence to support that [Reiske] plied the victim here with alcohol for the purposes ultimately achieved. Um, but in terms of a porn site, I think that's speculation. It might explain the entire course of events because nothing else does. Um, but that's speculation and I will not consider that in sentencing. And I'll give the alcohol thing

---

[4] Reiske, in part, stated, "I regret that I'll never be able to teach again, because teaching music was one of the most important roles I've had in my life. It saddens me that I have to let it all go. I admit I made several bad decisions that night. I never once had bad intentions." *Sentencing Tr*. at 36. At that time, Reiske did not apologize to T.H. for the crimes he committed against her. In fact, more than six months after sentencing, Reiske told his psychologist that the sexual act was consensual. *Modification Tr*. at 40.

some weight, but not a great deal. . . . [W]e all know that [Reiske] is an accomplished musician and an accomplished computer engineer[,] . . . and we all know as well that his conduct was inexcusable. And I think each and every one of the people who have gotten up and spoken spoke honestly about their relationship. I think they -- they each all know in their heart that what happened here is wrong and something needs to be done in spite of the fact that perhaps you do not want to admit it. We can't just step around what happened that night because it did happen. . . . [A] number of folks who have spoken are of my generation or close. . . . [P]robably every one of us knew somebody who did the sort of things that [Reiske] did or somebody who had done to them what [Reiske] did to this victim. And we all knew it was wrong and we didn't do it but that's what went on fifty (50) years ago. This is fifty (50) years later. This community has come a long[,] long way and this community and this society . . . has finally come to realize and appreciate the value of women in society. They are equal or perhaps more than equal, uh, partners in this society. They are not to be treated the way [Reiske] treated this young lady. And if it's a question fifty (50) years ago, it's -- it is no longer. That's not a mistake, that's not a piece of bad judgment that we step around. And I say that to everybody who has been here today and has spoken. I say that with respect to you all and I don't mean to offend you. I -- I appreciate the fact that you are here. But nevertheless, the conduct of that night needs to be dealt with, and it needs to be dealt with according to the Criminal Code of Indiana.

*Sentencing Tr*. at 37-40. The trial court sentenced Reiske to ten years for the

Class B felony conviction, of which eight years were ordered executed and two

years suspended to probation. For the Class A misdemeanor conviction, the

trial court ordered a one-year, concurrent sentence. Reiske's aggregate

executed eight-year sentence started on November 2, 2015. *Appellant's App. Vol. II* at 9.

[9]     On November 12, 2015, Reiske appealed that judgment in Cause Number 02A03-1511-CR-1877, but thereafter, he moved to remand and temporarily stay his appeal. *Appellant's Confidential App. Vol. II* at 23. Our court granted Reiske's motion and dismissed that appeal without prejudice to allow Reiske to "pursue post-conviction relief and sentence modification before the trial court." *Id*. We held, "If any part of the trial court's forthcoming ruling on Appellant's petition for post-conviction relief is adverse to Appellant, Appellant may, after filing a new notice of appeal, raise the issues he would have raised in [the first] appeal along with the new issues created by the trial court's ruling on the petition for post-conviction relief." *Id*. In May 2016, the trial court also granted Reiske's motion for a psychological evaluation by Dr. Stephen Ross. *Id*. at 12, 55.

[10]    In October 2016, Reiske filed a petition for modification of his sentence. At the January 2017 modification hearing, more than three years after Reiske committed the crimes, he apologized to the victim. *Modification Tr*. at 6-7. In support of modification, Reiske reported that he had had no "conduct reports" while incarcerated. *Id*. at 6. He explained that he had a change of attitude in prison, which arose from insight he had gained while taking part in groups like the Praise and Worship Team and playing drums with the "House Band" and the "Jazz Band." *Id*. at 7, 18. In his first prison job, Reiske built a database that kept track of offender movement within the prison. That job led to a job with the prison library, where Reiske built a new database to track the inventory

of books. Thereafter, Reiske worked with the prison's IT team. *Id*. at 13-14. Reiske testified that he was taking classes and had "enrolled in Grace College for an Associate's Degree in the Science of Interdisciplinary Studies." *Id*. at 19. Finally, Reiske, again, highlighted that his relationships with his former employer, his parents and stepparents, and his girlfriend and her parents, provided him with great support. *Id*. at 20. From the bench, and later by order, the trial court denied Reiske's request for sentence modification. He now appeals.

## Discussion and Decision

[11]   Reiske asserts that the trial court abused its discretion by denying his petition for sentence modification. We review a trial court's decision regarding a petition to modify only for an abuse of discretion. *Carr v. State*, 33 N.E.3d 358, 358 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion has occurred when the trial court's decision was "clearly against the logic and effect of the facts and circumstances before the court." *Id*. at 359. In deciding whether an abuse of discretion occurred, appellate courts may not reweigh the evidence, but will consider only the evidence favorable to the judgment. *Banks v. State*, 847 N.E.2d 1050, 1052 (Ind. Ct. App. 2006), *trans denied*. A defendant who, before July 1, 2014, commits an offense or is sentenced may petition the trial court for a reduction or suspension of sentence, "[a]t any time after: 1) a convicted person begins serving the person's sentence; and 2) the court obtains a report from the department of correction concerning the convicted person's conduct while imprisoned." *See* Ind. Code § 35-38-1-17(a), (e). The trial court

"may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing." Ind. Code § 35-38-1-17(e). The trial court may also deny a request to suspend or reduce a sentence under this section without making written findings and conclusions. *See* Ind. Code § 35-38-1-17(h).

[12] On appeal, Reiske argues that he had compiled an incredible record of rehabilitation and achievement at the time of the modification hearing.

> He was a model inmate. He helped develop software systems to aid the Department of Correction['s] New Castle facility. He took part in music and worship programs, completed courses through Grace College in a degree program, responded to violence directed at him with non-violence, showed a strong family support system and employment waiting for him upon release, and presented expert psychological testimony about sentencing alternatives in a recidivism context.

*Appellant's Br*. at 9. While recognizing that this case involves a "very serious crime," Reiske argues that this is one of the "rare" cases with "a record that shows a sentencing court abused its discretion in denying a sentence modification." *Id*. We disagree.

[13] On appeal, Reiske focuses on his participation in programs, the good work he has done in his prison jobs, and the efforts he has made to educate and rehabilitate himself, contending that these actions are sufficient proof that the trial court abused its discretion when it denied his petition for sentence modification. These are the same arguments defense counsel made at the

sentence modification hearing. At that hearing, the trial court recognized Reiske's accomplishments, yet found that those accomplishments did not warrant a modified sentence. The trial court explained:

> [A]s pointed out by counsel for the State, um, I – I'm not seeing a substantial change or a significant enough change from what existed a year or so ago to modify this sentence. Um, and I will try to explain . . . that to you. Um, he -- the Defense, [sic] appropriately perhaps, has dwelt upon his achievements at the DOC and I congratulate you for the things that you have done. I'm also well aware that those things have gained you certain privileges, which is good. You've -- you've earned those privileges and you're entitled to those. Um, and counsel has dwelt upon rehabilitation. Um, but we must always remember that there is some part of a sentence that is imposed for punishment, um, and we have not fulfilled that. Um, you -- and -- and don't misunderstand what I'm about to say, um, because I'm certainly not offended at all, but, um, you, shall we say, critiqued my crafting of a sentence, um, and I would assure you that I spent a great deal of time, um, attempting to determine what's appropriate in this case under all of the circumstances that existed. And I'm still comfortable with that sentence.

*Modification Tr.* at 50-51.

[14] Reiske was convicted of Class B felony criminal deviate conduct and Class A misdemeanor contributing to the delinquency of a minor. At the time of sentencing, the advisory sentence for a Class B felony was ten years. Reiske was sentenced to the advisory sentence, but was ordered to serve only eight of the ten years. Reiske requested a modification of his sentence about fourteen months into his sentence. The trial judge, who had presided over the original

trial, the sentencing hearing, and the modification hearing, considered Reiske's progress, his talents, and his family support. Based on the evidence, the trial court set forth a clear rationale as to why modification of Reiske's sentence was not warranted after just fourteen months of incarceration. An abuse of discretion has occurred when the trial court's decision was "clearly against the logic and effect of the facts and circumstances before the court." *Carr*, 33 N.E.3d at 358. The trial court did not abuse its discretion when it denied Reiske's petition for sentence modification.

[15] Affirmed.

Riley, J., and Brown, J., concur.